IN RE ESTATE OF WILLIAM HENRY LUKE.
BESSIE K. FRAIN AND ANOTHER v. ZELLA E. WATTS.[1]

May 25, 1945.

No. 33,921.

*F. J. O'Brien* and *Homer Morris,* for appellants.
*Irving L. Eckholdt,* for respondent.

LORING, CHIEF JUSTICE.

William Henry Luke died December 17, 1940, at the age of 84 years, leaving two daughters, appellant Bessie K. Frain and respondent, Zella E. Watts. He had made a will October 21, 1926, by which he gave each daughter a 40-acre tract of his 80-acre farm for life, with the remainder to two grandchildren, a son and daughter of Zella. Bessie had no children. August 6, 1929, he made another will, leaving one dollar to Zella and the remainder of his property to Bessie. The probate court of Olmsted county, to which the wills were ultimately presented for probate by the respective beneficiaries, rejected both wills on the ground that decedent was not of sound mind and memory and, at the time of the making of the wills, did not have the mental capacity to make a will or to make a testamentary disposition of his property.

[1]Reported in 19 N. W. (2d) 5.

Upon appeal, the district court found that testator did not have testamentary capacity on August 6, 1929, but did have such capacity on October 21, 1926, when the first will was made, published, and declared. Thereupon Bessie, acting through her guardian, and her husband, M. J. Frain, appealed to this court and have assigned as error the insufficiency of the evidence to sustain the trial court's finding of lack of testamentary capacity on August 6, 1929.

The sole question presented to this court is whether there is sufficient evidence to support the finding of such lack of capacity. The proponent of the 1929 will presented a prima facie case of capacity. The testimony of the lawyer who drew the will was strongly in favor of testator's mental capacity to dispose of his property; but the objector presented evidence which abundantly supported testator's lack of disposing memory. Apparently, he was well aware of what property he owned, which at the dates of both wills was an 80-acre farm with some stock and machinery. He comprehended his relationship to the daughters and the grand-children, who would naturally have claims on his bounty. The problem presented to the trial court was whether he comprehended the effect of his will in disposing of his property and whether he was able to hold these things in his mind long enough to perceive their obvious relations to each other and to form a rational judg-ment in relation to them. In re Estate of Holmstrom, 208 Minn. 19, 292 N. W. 622; In re Estate of Boese, 213 Minn. 440, 7 N. W. (2d) 355; In re Estate of Dahn, 208 Minn. 86, 292 N. W. 776.

In 1926, before testator made his first will, he had been examined by a physician who had had considerable experience with mental diseases. The doctor gave his opinion that at that time testator was of sound mind and disposing memory and capable of making a will. May 2, 1929, he was again examined by the same doctor, who found a marked change in his mentality:

"* * * He certainly had lost a great deal of his memory for recent events. There was no doubt that his judgment was im-paired—his insight. He would ramble, and it was very hard to

carry on any sustained conversation with him for any length of time and he would, perhaps, repeat himself."

The physician stated further that he was suffering from the deterioration of old age, and he gave medical terms for the affliction. He said that, while he might remember things that had happened long before, there was grave doubt as to "whether he appreciated and could exercise any reasonable amount of judgment about the immediate facts or the affairs that he would be asked or decide to do anything about." He also expressed the opinion that his condition would grow progressively worse and would not be better at a later date in the same year. Other witnesses testified to testator's lack of memory almost from moment to moment. Zella testified from her frequent contacts with her father that he was incapable of disposing of his property because "he didn't have memory enough or mental faculties enough to know what he wanted to do or how to do it." He was incapable of properly operating his small farm or properly caring for his horses and cattle.. It was necessary to have a guardian appointed for him; and, while the man who was subsequently appointed guardian testified at the hearing on the guardianship that he did not think Luke needed a guardian, he subsequently changed his mind after he had been appointed and started to look after Luke's affairs. Many of Luke's neighbors testified to his mental shortcomings. Taking the evidence as a whole, we think that the trial court's findings of testator's lack of testamentary capacity when he made the will of August 6, 1929, are abundantly sustained. In re Estate of Dahn, 208 Minn. 86, 292 N. W. 776.

Judgment affirmed.